## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- X

ESTATE OF YAEL BOTVIN, *et al.*,

                             Plaintiffs,                     Docket No:

              -against-                          21-cv-3186 (RCL)

HEIDEMAN, NUDELMAN & KALIK, P.C., *et al*,

                            Defendants.

------------------------------------------------------------------- X

### PLAINTIFFS' MOTION FOR RECONSIDRATION

      Pursuant to Fed. R. Civ. P. 52(b), 59(e) and 60(b)(6), and pursuant to the Court's inherent and equitable powers to reconsider its own rulings, Plaintiffs respectfully move for reconsideration of this Court's Memorandum Opinion of September 27, 2022 (Dkt. 14) ("Opinion") and Order of the same date (Dkt. 15) ("Order") which granted Defendants' motion to dismiss on the issue of proximate cause.

      Familiarity with the briefing of the underlying motion to dismiss and the September 27, 2022 Opinion and Order is assumed. This motion will therefore address only the specific issues, rather than recapitulating the entire briefing and Opinion.

### A.     The Law Does Not Require the Degree of Foreseeability the Opinion Applied

      In reaching the conclusion to dismiss Plaintiffs' case on the ground of proximate cause, the Opinion held that:

> To find for the Botvin Family, this Court would have to determine that the Heideman defendants should have been aware that: (1) a substantial cache of U.S.-based Iranian assets would be located; (2) other plaintiffs also seeking to execute their judgments against Iran would devise a novel privately-negotiated settlement

agreement; (3) a delay in securing a judgment would cripple the Botvin Family's effort to participate in the settlement; (4) the judge overseeing the settlement agreement would allow the Botvin Family to participate in the settlement; (5) Congress would pass an "unusual statute," *Bank Markazi*, 578 U.S. at 215, removing the legal barriers to securing the assets; (6) the statute would be upheld on appeal; and (7) the Botvin Family would ultimately have recovered more than they did from the U.S.V.S.S.T. Fund.

(Opinion at 20).

The Court has thus set up a multifactored and ultra-specific foreseeability hurdle that would require Defendants at the time they committed their negligence to have been able to foresee the exact particulars of everything that would unfold over the ensuing years. This is an impossible hurdle and is not what the law requires. If a drunk drives a car through a city it is foreseeable that he will kill someone even if one cannot foresee at which intersection a collision will happen, at what speed, whether the victim will be a pedestrian or another driver, and from what direction the impact will come. Perhaps the drunk driver will hit a tree which will in turn fall on a nearby house and kill someone asleep inside. All that is required to establish proximate cause is that the type of harm be reasonably foreseeable; not the exact details.

This issue is addressed with citation to relevant caselaw in Point II of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. 12), which Plaintiffs respectfully ask the Court to review. The Opinion did not directly address this issue raised by Plaintiffs in their briefing.

Plaintiffs explained in Point II that Courts have defined proximate cause as follows:

Proximate cause is "that cause, which in natural and continued sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Lacy v. District of Columbia*, 424 A.2d 317, 320 (D.C. 1980) (internal quotation omitted). The "***defendant need not have foreseen the precise injury, nor should [he] have had notice of the particular method in which a harm would occur, if the possibility of harm was clear to the ordinary prudent***

*eye.*" *Spar v. Obwoya,* 369 A.2d 173, 177 (D.C. 1977) (citing *Kendall v. Gore,* 98
U.S. App. D.C. 378, 387, 236 F.2d 673, 682 (1956))

*District of Columbia v. Harris,* 770 A.2d 82, 92 (D.C. 2001) (emphasis added). The District of

Columbia Court of Appeals "has defined proximate causation as that cause which, in natural and

continual sequence, unbroken by any efficient intervening cause, produces the injury, and without

which the result would not have occurred." *District of Columbia v. Zukerberg,* 880 A.2d 276, 281

(D.C. 2005) (internal quotation marks and citation omitted).

Given this legal standard—that the precise method by which the injury would occur need

not have been foreseeable as long as the injury naturally flows from the negligence—this Court's

all-but-impossible seven factor formulation quoted above is plainly incorrect. As argued in

Plaintiffs' briefing, the proper formulation of the proximate cause issue in this case is whether it

was foreseeable that Plaintiffs would lose opportunities to enforce a judgment against Iran as a

result of substantial delays in their obtaining such a judgment caused by Defendants' failure to

handle the litigation of Plaintiffs' case in a workmanlike manner. In other words, is it foreseeable

that one will miss one's boat if one does not get to the pier expeditiously? Whether the Defendants

could have foreseen the exact circumstances of the *Peterson*/Clearstream scenario, as the Court's

seven-factor formulation would require, is actually irrelevant.

Perhaps when Defendants' representation of Plaintiffs began nobody could have foreseen

the *Peterson* litigation and settlement. But that is as irrelevant as saying that the drunk driver from

the example above could not have foreseen the color of the car he would hit. Any lawyer, especially

these Defendants, could and should have understood the urgency of getting a judgment as

expeditiously as possible in order to have a shot at enforcing the judgment since it is foreseeable

that without a judgment to enforce one cannot execute against any assets and a jury could find that

it was reasonably foreseeable that there would be possibilities of enforcing the judgment. Even in

the pre-USVSST Fund era numerous lawyers—including, quite prominently, the Defendants—handled state sponsored terrorism cases against Iran such as the Plaintiffs' case on a contingency fee basis, thus demonstrating clearly their belief that the judgments, or at least significant parts of them, would be collected.

Plaintiffs illustrated this point by pointing to the *Weinstein, Rubin*, *Bland* and *Wultz* cases, as examples of cases where plaintiffs got judgments against Iran and were able to at least partially enforce them during the same time period when Plaintiffs could have been enforcing their judgment had Defendants' negligence not delayed them from getting their judgment timely. Plaintiffs also pointed to *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Frym*, 814 F3d 1053 (9th Cir. 2016), an enforcement action by plaintiffs in *Rubin*, where plaintiffs recovered funds in partial satisfaction of their judgment against Iran. The *Bland* case was particularly salient because the *Bland* plaintiffs, represented by our Defendants, established a lien on the Clearstream assets at issue in *Peterson* based on a 2006 judgment under § 1605(a)(7) that was converted into a judgment under § 1605A in 2011 in time to be part of the 2012 settlement agreement in the *Peterson* case that divided the Clearstream assets between the judgment creditors who had encumbered the assets. Plaintiff's point in discussing these cases was that a jury could reasonably conclude that had Defendants not bungled Plaintiffs' case, they would also have had a judgment against Iran in time to have shared in the *Peterson* settlement.

Plaintiffs also pointed to the program created by the Victims of Trafficking and Violence Protection Act of 2000 ("VPA") as amended by Terrorism Risk Insurance Act § 201(c) ("TRIA") that partially satisfied the judgments of applicants who had judgments against Iran. All those people—for example, the plaintiffs in *Weinstein* and *Elahi*—had been represented by attorneys who made sure to prosecute their cases and get their judgments so that when the TRIA program

came along they were eligible. Indeed, all the thousands of victims of state sponsored terrorism who were ultimately eligible to get partial satisfaction of their judgment from the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund") all were represented by johnny-on-the-spot lawyers who timely prosecuted their cases and got them their judgments even though they obviously did not know the USVSST Fund would come into existence. But after TRIA everyone knew that besides direct enforcement there was also a possibility of enforcement via a government program designed to deal with Iranian assets and liabilities.

The Opinion seems to have misunderstood the point Plaintiffs were making by citing examples like *Weinstein, Rubin, Bland* and *Wultz*. Rather than recognize that these cases each illustrate that without having a judgment a plaintiff cannot hope to enforce the judgment, the Opinion delves into discussion of whether the Defendants could have foreseen the minutia of each of the cases. As discussed above, whether the precise scenarios of any of these cases could have been foreseen is irrelevant as that is not the kind of foreseeability needed to establish proximate cause.

**B.      Defendants' Negligence Caused Significant Foreseeable Damage To Plaintiffs' Claims**

There is much Defendants could have done to get the judgment for Plaintiffs more expeditiously. Their representation was rife with years of delays caused directly by them, and they submitted numerous applications to the court that a jury could well find were below the standard of a reasonable attorney—as the court to which they were presented already ruled. Moreover, a jury could well find that even time spent waiting for the court to decide a motion counts as delay caused by Defendants when the ultimate result of the motion is an order saying the motion papers were deficient if the jury finds that a reasonable lawyer should have known the papers were deficient.

A jury could also find that Defendants did not act reasonably by failing to pursue a claim under § 1605A immediately in 2008, as soon as that statute was enacted. It should be recalled that Defendants commenced an action under that statute, but never served it and allowed it to be dismissed as abandoned—all without consultation with the clients. This Court wrote in the Opinion that after the enactment of § 1605A Defendants "chose to do both" by proceeding with the original § 1605(a)(7) case while also filing a new case under the new § 1605A. (Opinion at 8). But this is not accurate, since other than filing the action under the § 1605A Defendants did nothing to prosecute it, ignored two orders to show cause why it should not be dismissed for failure to prosecute, and allowed it to be dismissed in 2009, only to refile it years later in 2012 after it was too late to fully participate in the *Peterson* case. This was a critical piece of negligence, since it would be reasonable for a jury to conclude that had the § 1605A case filed in 2008 been pursued with alacrity it would have been resolved before 2011, in time for Peterson. It should be noted that the vast majority of the Plaintiffs' judgment is attributable only to the § 1605A case for solatium on behalf of the decedent's family members, not the claim of the estate of the decedent.

With respect to the non-estate plaintiffs Defendants' conduct is particularly alarming, given the court's later finding that Defendants ultimately presented submissions on the § 1605(a)(7) claim that were "'so inadequate in their discussion of' intentional infliction of emotional distress and solatium damages 'that this Court has no choice but to deny plaintiffs any recovery.'" (Opinion at 12 quoting *Botvin V* at 244-45). Defendants needed to get a judgment on behalf of <u>all</u> their clients. It was negligence not to put the best foot forward on behalf of the surviving mother and sister non-estate claimants.

The Opinion quotes Defendants' excuses as to why they did not pursue the § 1605A case in 2008, claiming they exercised professional judgment and believed that pursuing the § 1605A

claim would somehow contradict the judge's intention (Opinion at 9-10). But these excuses have not been subjected to cross-examination, may not even be true, and at best raise an issue of fact for the jury. On a motion to dismiss, "the Court 'must accept as true all of the factual allegations contained in the complaint.'" (Opinion at 17, quoting *Atherton v. D.C. Off. of Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009). That means Defendants' excuses, as long as they are issues of fact, are irrelevant. Moreover, the decision whether to pursue or abandon a cause of action requires informed consent of the client, of which there is no evidence whatsoever. A jury could reasonably conclude that Defendants' proffered excuses are mere *post hoc* rationalizations.

The Opinion's discussion of the § 1605A issue (Opinion at 26-27) glosses over all of this, calling it "speculation" that Plaintiffs "would have fared better had…Defendants pursued the first § 1605A claim." (Opinion at 26). This analysis is deeply flawed. In 2008 when Defendants filed the first § 1605A claim, and at every point thereafter until they finally filed a second § 1605A claim in 2012, Plaintiffs' claims were in trouble. As time and the court's subsequent orders indeed proved out, the original § 1605(a)(7) claim offered no relief at all to the non-estate plaintiffs as default judgment was ignominiously denied for reasons that defendants should have known would not have been applicable to a § 1605A claim. And the § 1605(a)(7) case itself was needlessly delayed due to Defendants' failure to submit proper proof on matters that would not have been applicable to a to a § 1605A claim. A jury could reasonably find that all the deficiencies in the § 1605(a)(7) case discussed in the Opinion should have been anticipated by Defendants.

Further, the statement in the Opinion that "it is not at all clear that pursuing the First § 1605A claim would have led to a significantly different result" is not a proper holding for a motion to dismiss as it is actually a jury issue. The Opinion mischaracterizes Plaintiffs' position as asking the Court "to speculate that, had the Heideman defendants litigated the First § 1605A

claim differently, the court would have granted judgment for the plaintiffs sooner, and that judge would have agreed with—or exceeded—this Court's measure of damages.

But this is not actually Plaintiffs' position. Plaintiffs never asked the Court to speculate about anything. Point III of Plaintiffs' brief cited the applicable standard in a legal malpractice case, explaining that such cases are decided by juries based on expert testimony regarding the outcome that would likely have obtained but for the malpractice. Plaintiffs cited numerous cases for the proposition that the standard is not what a particular judge would have done but what a reasonable judge would have done. Plaintiffs' underlying briefing cited numerous cases discussing the "reasonable judge" standard by which the jury determines based on expert evidence what a reasonable judge would have ruled (Dkt. 12, pp. 32-33). Further, Plaintiffs laid out the anticipated basis for such expert testimony: since there was ultimately a ruling in this case on the second § 1605A claim, and since Judge Urbina decided other § 1605A cases, it is certainly possible for an expert to form an opinion as to what would likely been the outcome had a reasonable judge decided the first § 1605A claim.

The Opinion did not address any of the cases plaintiff cited in Point III, nor did it discuss the particulars of Plaintiffs' arguments in that Point. It is respectfully submitted that the Court should reconsider the matter and address the cases and arguments made by Plaintiffs in Point III.

## <u>CONCLUSION</u>

For the reasons stated herein and in Plaintiffs' Memorandum in Opposition (Dkt. 12), this Court should grant the within motion, reconsider the Opinion dated September 27, 2022 (Dkt. 14), and on reconsideration vacate the Opinion dated September 27, 2022 (Dkt. 14) and the Order dated September 27, 2020 (Dkt. 15), and substitute an order denying Defendants' pre-answer motion to dismiss.

Dated:   Brooklyn, New York
         October 25, 2022

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiffs*

by: _____
     Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated:    Brooklyn, New York
           October 25, 2022

_____
Robert J. Tolchin